In the
United States Court of Appeals
For the Seventh Circuit

No. 98-2880

Morritz J. Weiss,

Plaintiff-Appellant,

v.

Brad Cooley,

Defendant-Appellee.

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. IP97-0471-C-H/G--David F. Hamilton, Judge.

Argued February 15, 2000--Decided September 22, 2000

Before Posner, Easterbrook, and Diane P. Wood, Circuit Judges.

Diane P. Wood, Circuit Judge. Morritz Weiss was the principal suspect in a highly charged and well publicized case involving the rape of a 15-year-old African-American girl near Indianapolis. The present case concerns the treatment he received from three officers--Brad Cooley, Sheriff Terry Weddle, and Jail Commander Guy Fogelman--while he was in custody at the Morgan County, Indiana, jail before his trial. In short, he claims that the jail officials put him with other inmates who the officials knew would attack him, and who in fact did attack him. Weiss filed suit under 42 U.S.C. sec. 1983, claiming that the officers in so doing violated his constitutional rights. The district court dismissed his claims against Weddle and Fogelman under 28 U.S.C. sec. 1915A, on the ground that the complaint failed to allege facts that would amount to "deliberate indifference." It then granted summary judgment in Cooley's favor. We conclude that the district court properly dismissed the claims against Weddle and Fogelman, though not because of any lack of facts per se, but that there were genuinely disputed facts in the case against Cooley. We therefore affirm in part and reverse and remand in part for further proceedings.

I

The account of the facts that follows takes them, of course, in the light most favorable to Weiss. The dismissals with respect to Weddle and Fogelman were appropriate only if the complaint failed to give the defendants adequate notice of the claim, or if there was no set of facts that could be proven, consistently with Weiss's allegations, that would support relief. See, e.g., Walker v. National Recovery, Inc., 200 F.3d 500, 503 (7th Cir. 1999), citing Hishon v. King & Spalding, 467 U.S. 69, 73 (1984). This standard, derived from Rule 12(b)(6), also applies to the dismissal of claims under sec. 1915A. See Sanders v. Sheahan, 198 F.3d 626 (7th Cir. 1999); see also DeWalt v. Carter, No. 98-2415, 2000 WL 1137385 (7th Cir. Aug. 11, 2000) (applying same rule to dismissals under 28 U.S.C. sec. 1915(e)(2)(B)(ii)). The problem here was not notice; it was instead the sufficiency of Weiss's allegations. With respect to the summary judgment in Cooley's favor, we present the facts in the summary judgment record in the light most favorable to Weiss.

In early June 1995, Weiss (a white male) was charged by Morgan County authorities with the attempted murder, criminal confinement, and rape with a deadly weapon of a young African-American woman. He was not taken into custody immediately, because he could not be found. Only after a widely publicized manhunt did the police track him down in Tennessee. He was captured there, and on July 6, 1995, Detective Robert Betts of the Morgan County Sheriff's Department and another detective brought him back to the Morgan County Jail. During transport, the officers informed him that there had been extensive publicity about the case, that there was great public anger, and that racial tensions had been heightened by it. Detective Betts then commented that Weiss had "no idea" what was waiting for him inside the Morgan County Jail.

Weiss's arrival at the jail was filmed by television crews. The officer responsible for booking him was Cooley, who was aware of the news accounts both about the story and about Weiss's arrest in Tennessee. As booking proceeded, officers and inmate "trusties" congregated around the booking area to watch the spectacle. Cooley, meanwhile, asked Weiss several questions: whether (1) he had any enemies in the jail, (2) he needed any special care, or (3) he had ever assaulted anyone or was contemplating assaulting anyone. Weiss answered "no" to each of these.

With booking complete, Cooley began escorting Weiss toward C Block, which was used for holding persons accused of committing serious felonies.

As they walked through A and B Blocks, other inmates (who had apparently learned who Weiss was and what he was charged with doing) shouted out a variety of threats and insults, including "we know who you are and what you did." Cooley claims now that the path through these cell blocks is lined with one-way glass, which allows inmates behind the glass to see that a person is moving, but makes it difficult or maybe impossible to identify the particular person. Weiss counters that the glass is not so opaque; instead, if inmates come close enough to it, they can identify the person walking through the area.

Hearing the shouts, Weiss alleges that he then asked Cooley to put him in isolation. Cooley retorted "you have to go where I put you." Then, as inmates from A and B Blocks continued to yell, the following exchange occurred:

Weiss: You can't put me in here or there's going to be problems.

Cooley: You have to face the music sometime.

The two then proceeded into C Block, which was quiet but tense.

After dinner, a group of inmates went to Weiss's cell. One of them, Sid Bennett, said that he already knew about Weiss's case and then said to Weiss "we are going to kick you're a**." Another, Douglas Estep, assaulted Weiss, causing a cut that required sutures and fracturing his left eye socket (although the fracture was not discovered for nearly nine months). Weiss managed to alert the guards, who came and took him back to the receiving area. Sergeant Richard Allen asked him what he had done to deserve placement in C Block. When Weiss replied that he was new to the jail and that Cooley had taken him directly there, Allen commented "Cooley has been here long enough--he should be smarter than that."

II

Weiss's original complaint in the action named Weddle, Fogelman, and Cooley in their individual capacities. As required by 28 U.S.C. sec. 1915A, the district court reviewed the complaint prior to its being docketed. The court concluded that Weiss had failed to plead facts in his claims against Weddle and Fogelman that would have shown they were "deliberately indifferent" to his safety, as required by the Eighth Amendment standards, as incorporated in the due process clause for pretrial detention cases. See, e.g., Zarnes v. Rhodes, 64 F.3d 285, 289-90 (7th Cir. 1995). It therefore dismissed the claims against those two defendants, and, perhaps because those

claims were dismissed before the complaint was even docketed or the defendants served, it entered no "final judgment" relating to that part of the case.

After that setback, Weiss moved on July 18, 1997, for appointment of counsel under 28 U.S.C. sec. 1915. The court initially denied the motion because Weiss had not yet sought private counsel. Weiss then looked around, but he was unable to persuade any lawyer to take his case. He returned on October 8, 1997, with another motion for appointment of counsel. This time, on February 26, 1998, the court denied the request on the ground that a lawyer was not required given the lack of complexity or merit to the case and Weiss's own ability to handle it.

On November 24, 1997, Cooley moved to strike the affidavit of inmate Steven Sherwood; at the same time, he moved for summary judgment. Sherwood had attested that Morgan County Jail officers knew that Estep would assault other inmates, and, worse than that, that they used Estep as a vehicle for abusing prisoners. Sherwood also claimed that Cooley used inmates to threaten him. In an order dated May 29, 1998, Judge Hamilton struck a substantial part of the Sherwood affidavit on the ground that it was not supported by personal knowledge, and he granted Cooley's motion for summary judgment.

On June 10, 1998 (within the 10 business days permitted by Rule 59), Weiss asked for relief under Fed. R. Civ. P. 59 and 60. Along with his motion, he proffered another affidavit that laid out more facts supporting his claims. The highlights included the following points:

The trusties were calling Weiss a "fucking nigger lover" and "fucking psycho" before Cooley told them to shut up.

Weiss furnished a more detailed description of his explanation to Cooley about why he wanted to be put in isolation.

Weiss gave more details of his trip through Blocks A and B, with a number of additional vulgar references like his first one.

Weiss claimed that he heard the inmates ask Cooley to put Weiss in their cell blocks so that they could "fuck him up."

The district court denied both requests on June 23, concluding that even if the facts in Weiss's second affidavit were really new, he had failed to show how this new information created a genuine issue of fact.

Last, Weiss submitted a request to file an amended complaint, which the court denied on July 7. The amended complaint adds an official capacity claim against Weddle; it augments Weiss's allegations against Weddle and Fogelman, emphasizing that they personally failed to implement an adequate classification system for new inmates; and it provides more detail about the incidents during and after the booking process. The court denied his request both because it was out of order unless or until the prior final judgment was re-opened, and because it was legally insufficient in any event. Weiss appealed.

III
A.

The first question Weiss raises concerns our appellate jurisdiction; he is apparently worried that his notice of appeal might not be adequate to cover his claims against Weddle and Fogelman, as well as those against Cooley. The notice refers to the May 29, 1998, judgment, which itself names only Cooley as a party. Nevertheless, looking at the requirements for notices of appeal set forth in Fed. R. App. P. 3(c), we are satisfied that Weiss's notice was enough to bring up all of his claims. First, Rule 3(c) requires only that the notice of appeal specify the party taking the appeal, the judgment or order from which the appeal is being taken, and the court to which the appeal is taken. Weiss's notice does all that. In general, a notice of appeal from a final judgment, like the May 29, 1998 judgment here, is adequate to bring up everything that preceded it. See Kunik v. Racine County, Wis., 106 F.3d 168, 172-73 (7th Cir. 1997). The district court went out of its way to signal that the ruling dismissing Weddle and Fogelman was not "final" (plainly true) or certified for appeal in any way, with language in the dismissal order that says "no partial judgment shall issue at this time pursuant to Fed. R. Civ. P. 54(b) as to the claims which are dismissed." Weiss's notice of appeal was properly filed after the district court disposed of the remaining claim against Cooley, and it was enough to cover the entire case.

There is a separate problem arising from the fact that Weddle and Fogelman were never formally served in the action. They thus never became parties, and as non-parties they have not filed separate briefs on appeal. Cooley's brief, however, expressly addresses the question whether the dismissals for Weddle and Fogelman were proper. We cannot tell whether there was any agreement between Cooley's lawyer and Weddle and

Fogelman that supported this presentation--indeed, the disclosure statement in Cooley's brief indicates exactly the opposite, because it affirms that the attorney represents only Cooley. Ideally, in these situations, one might imagine some form of notice of the final judgment and an opportunity for a limited intervention by the unserved putative defendants solely for the purpose of defending on appeal the district court's decision to dismiss claims brought under sec. 1915A against them. Even without such a formal procedure, however, we are satisfied that our de novo review of this point can proceed in this case in light of the fact that their position has been briefed with no apparent objection from them.

B.

We explain first why we have concluded that summary judgment in favor of Officer Cooley was premature. In order to recover from officials in a prison or a jail, a plaintiff must show both an objective risk of danger and actual knowledge of that risk on the part of the custodial staff. See Henderson v. Sheahan, 196 F.3d 839, 844-45 & n.2 (7th Cir. 1999); Payne for Hicks v. Churchich, 161 F.3d 1030, 1041 (7th Cir. 1998). As we held in Payne, "[a] detainee establishes a sec. 1983 claim by demonstrating that the defendants were aware of a substantial risk of serious injury to the detainee but nevertheless failed to take appropriate steps to protect him from a known danger." Id. For pretrial detainees, such a claim arises under the Fourteenth Amendment's due process clause rather than the Eighth Amendment, but there is little practical difference between the two standards.

No one here doubts that Weiss faced an objective risk of serious injury. The question is whether he presented enough evidence that Cooley was aware of that risk to create a genuine issue of material fact. The district court thought not, because Weiss never told Cooley that Estep or anyone else in C Block presented a risk of harm, and because Cooley had no advance knowledge that Estep and Bennett were going to confront Weiss.

In our view, by focusing so tightly on the specifics of the assault that occurred, the district court did not appreciate the significance of the evidence of Cooley's state of mind that Weiss presented. It is certainly true that a deliberate indifference claim cannot be predicated merely on knowledge of general risks of violence in prison. See, e.g., James v. Milwaukee County, 956 F.2d 696, 701 (7th Cir. 1992). But there is some distance between such a generalized claim and advance knowledge of every

detail of a future assault. Just because it is possible to state a claim on the basis of a guard's knowledge that a particular inmate poses a heightened risk of assault to the plaintiff, see Billman v. Indiana Dept. of Corrections, 56 F.3d 785, 788 (7th Cir. 1995), does not mean that this is the only way to state a claim. Sometimes the heightened risk of which the guards were aware comes about because of their knowledge of the victim's characteristics, not the assailant's. See, e.g., Langston v. Peters, 100 F.3d 1235, 1238-39 (7th Cir. 1996) (discussing inmates likely to be targeted by gangs); Swofford v. Mandrell, 969 F.2d 547, 549-50 (7th Cir. 1992) (noting that inmate was arrested on suspicion of sexual assault); Walsh v. Mellas, 837 F.2d 789, 793 (7th Cir. 1988) (referring to inmates who are "member[s] of an identifiable group").

The latter group of cases more closely fit Weiss's claim, and from that standpoint he introduced enough evidence to withstand summary judgment. Cooley's remark about facing the music is as close to an admission of subjective knowledge that Weiss faced a substantial risk of serious harm as one is likely to see in these cases. Although it was before the district court as part of the summary judgment record, in Weiss's first affidavit, the court made no mention of it. Moreover, even though Sergeant Allen's statement that "Cooley should be smarter than that" might be interpreted in several ways, taking the inferences favorably to Weiss it is some evidence that Cooley knew what risks Weiss faced as a sexual assault offender in C Block. Furthermore, Weiss had evidence showing that the inmate trusties observed not only his booking but the media show that surrounded it, that they knew what he was accused of, and that they had access to the rest of the inmate population. Cooley was the booking officer, and so even without Weiss's second affidavit (which the district court had excluded), a trier of fact could infer that Cooley was able to put two and two together and come up with four.

Naturally, a trier of fact may interpret the "face the music" statement differently and may put a more innocuous face on Weiss's other evidence. But those choices must be resolved at a trial, not on summary judgment.

C.

Our decision with respect to Weddle and Fogelman depends heavily on the proper standards for dismissing cases for failure to state a claim (whether under Rule 12(b)(6) or, as here, under sec. 1915A). Weiss explains on appeal that his theory against these two defendants is that they deliberately failed to implement a proper

classification system, and as a result he was exposed to Estep. In order to show deliberate indifference on either of their parts, Weiss would have to show that they failed to implement a segregation policy and that they did so with the motive of allowing or helping prisoners to injure one another. See Walsh v. Mellas, supra; see also City of Canton v. Harris, 489 U.S. 378, 389-90 (1989). Put a little more specifically, Weiss would have to prove that Weddle and Fogelman knew that the probability that certain inmates would face extreme and unusual risks was so high that their failure to classify inmates on such a basis amounted to deliberate indifference to the safety of the high-risk individuals.

The defendants' (i.e. Cooley in his brief, on behalf of Weddle and Fogelman) main response is that Weiss's complaint is inadequate. The original complaint read as follows on this point:

There was no policy in adequately classifying inmates, and if there was, it was not enforced. Plaintiff asked about a grievance, but was ignored. Widdle [sic] and Foglman [sic] are responsible for this.

The question, however, is not whether this excerpt alleged all the facts that Weiss would need to prove in order to prevail on his claim--or specifically, whether it contained a sufficient allegation of knowledge. As we have repeatedly noted, fact pleading is not required in federal court. See, e.g., Bennett v. Schmidt, 153 F.3d 516, 518 (7th Cir. 1998); American Nurses' Ass'n v. State of Illinois, 783 F.2d 716, 727 (7th Cir. 1986); see also International Marketing, Ltd. v. Archer-Daniels-Midland Co., 192 F.3d 724, 733 (7th Cir. 1999). It is instead whether this was enough, under the notice pleading regime of the Federal Rules, to alert Weddle and Fogelman to the claim Weiss (a pro se plaintiff, after all) wanted to present against them. See Hutchinson ex rel. Baker v. Spink, 126 F.3d 895, 900 (7th Cir. 1997).

Although Weiss was not permitted to file his amended complaint, it is in the record on appeal and we may look at it for the limited purpose of seeing whether there might have been allegations consistent with the original complaint that he could have proven that would have permitted him to recover--that is, allegations that would have satisfied both the objective and the subjective components of an Eighth Amendment claim. It does not, however, allege any unconstitutional motive on the part of Weddle or Fogelman. It says only that circumstances in the community and the jail were such that assaults on prisoners like Weiss were "inevitable" and that this was enough to

show deliberate indifference on their part. His amended complaint also reveals that he is not charging them with the failure to enact any classification system at all; he claims instead that the system they use is inadequate. Even under the generous standards of notice pleading, we conclude that this is not enough to sustain an Eighth Amendment claim against Weddle and Fogelman, and thus that the district court properly dismissed the claims made against them.

D.

Our decision to remand the claim against Cooley means that there is little that needs to be said about Weiss's remaining arguments on appeal, all of which relate to various discretionary rulings by the district court. He first challenges the court's decision not to give him counsel under sec. 1915(d). We review that decision for abuse of discretion. See Zarnes v. Rhodes, 64 F.3d 285, 288 (7th Cir. 1995). We see no abuse here. Weiss's initial complaint specifically referred to both the Eighth and the Fourteenth Amendments, and his motion in opposition to summary judgment competently addressed the key points. It is true, however, that counsel might have helped Weiss sharpen his allegations. On remand, we leave it to the district court's sound discretion to decide whether counsel may be desirable or if it wishes to stay with its original decision.

Weiss also argues that the court abused its discretion in denying the June 30 request for leave to file an amended complaint. But Weiss has no answer to the district court's point that a party cannot request leave to amend following a final judgment unless that judgment has been vacated. See Vicom, Inc. v. Harbridge Merchant Services, Inc., 20 F.3d 771, 784 (7th Cir. 1994). We also agree with the district judge that the amended complaint, while it contained some embellishments of the facts in the first one, was not materially different. On remand, the complaint will have served its purpose; it will be up to the district court to decide whether to permit an amended complaint or to move forward with service, discovery, and trial preparation.

Last, Weiss claims that the court abused its discretion in striking parts of the Sherwood affidavit. We disagree. The parts of the affidavit that were stricken all, in one way or another, merely asserted various facts "on information and belief." As the district court correctly observed, this is not enough to satisfy the personal knowledge requirement for affidavits.

IV

For the reasons stated, we AFFIRM the district court's judgment to the extent that it found that Weiss failed to state a claim against Weddle and Fogelman, and we REVERSE the decision granting summary judgment for Cooley. The case is REMANDED for further proceedings consistent with this opinion.