Allan D. SCHUBERT, Plaintiff–
Appellant,

v.

Thomas PAGE, et al., Defendants–
Appellees.

No. 00–2185.

United States Court of Appeals,
Seventh Circuit.

Submitted March 22, 2001.*

Decided June 19, 2001.

* After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R.App. P. 34(a)(2).

Before BAUER, WOOD, JR., POSNER, Circuit Judges.

## ORDER

Illinois inmate Allan Schubert appeals the jury verdict rendered against him and in favor of three defendant prison guards in this civil rights case. We affirm.

Two unidentified inmates attacked Schubert during a basketball game in the segregation yard at Menard Correctional Center on November 29, 1996. Menard's segregation yard consists of three separate yards arranged in a row, commonly known as the front, middle, and back yards. The front yard abuts a wide walkway called "Front Street" that prisoners and staff use to travel the prison grounds; the back yard abuts a solid wall, and the middle yard is sandwiched between. Each yard is separated from the other by wire fences and a walkway used by the guards. Two guard towers overlook the yards: Tower 18, which stands between the front yard and Front Street; and Tower 10, which sits on the roof of an adjacent building on the line between the middle and back yards. Additionally, a guard shack sits between the front and middle-yard fences. Both towers had obstructed views of the back yard. Defendant Stephen Faro was posted in Tower 18, defendant Brian Damon was posted in Tower 10, and defendant Tommy Lawless was posted in the guard shack.

The attack took place in the back yard. According to Schubert, two unidentified inmates "clotheslined" him as he ran with the basketball. The force threw him to the ground, where the two inmates severely kicked and stomped on his head and body. He quickly lost consciousness and now cannot remember what happened once he was on the ground or who attacked him. An inmate in the back yard during the attack (who also could not identify the attackers) claimed to have attempted to alert the defendants to the attack while it was in progress by yelling and waiving at the towers and shack. Another inmate who witnessed the attack from the middle yard confirmed that several inmates at-

tempted to get the attention of the guards in the towers. Both inmates also remembered seeing other guards standing around watching the incident, but neither could not identify them.

Faro, who was furthest from the incident, testified that he saw nothing and was unaware that Schubert had been attacked until Schubert served him with the complaint in this lawsuit. Damon testified that he did not observe anything unusual, but stated that the segregation yard is generally noisy and that the attack took place in the part of the back yard that he could not see from his position in Tower 10. Lawless, who was on the ground, also did not see the attack take place. He stated that he was inside the guard shack when an inmate alerted him that another inmate was injured in the back yard. Lawless immediately ran to the back yard and saw Schubert lying against the rear wall unconscious. Due to a standing order not to enter an occupied segregation yard alone, Lawless did not enter the yard to assist Schubert, but instead called the Health Care Unit ("HCU") for assistance. Lawless asked another inmate what had happened, and was told that Schubert ran into the wall while playing basketball. Lisa Gales, a medical technician in HCU, believed that Schubert's injuries were consistent with being kicked and stomped on (he had injuries to his head in the shape of shoeprints), although she also noted that Schubert never told her he was beaten by other inmates. Suspecting a head injury, the HCU sent Schubert to a hospital for further examination and x-rays. The hospital discovered no serious injuries, so Schubert was returned to the HCU to recover.

Schubert later brought this action pro se under 42 U.S.C. § 1983 against the warden of Menard and Faro, Damon, and Lawless, claiming that they violated his Eighth Amendment right to be free from cruel and unusual punishment by failing to protect him from the other inmates. The parties consented to trial before a magistrate judge. Schubert repeatedly asked the magistrate judge to request a lawyer to represent him, but the magistrate judge declined each of his requests because Schubert failed to make a reasonable attempt to retain counsel. The district court then dismissed the warden as a party because Schubert could not demonstrate that the warden was in any way responsible for the alleged constitutional violation. The defendants moved for summary judgment, but the magistrate judge denied their motion and requested an attorney to represent Schubert for the purpose of conducting the trial. Despite counsel's assistance, the jury returned a verdict for the remaining defendants, and the magistrate judge entered judgment accordingly. Schubert moved for judgment notwithstanding the verdict, but the magistrate judge denied the motion.

Schubert, again proceeding pro se, argues that the jury's verdict should be set aside and judgment entered in his favor because he presented evidence sufficient for the jury to conclude that the defendants were deliberately indifferent to his safety. He also argues that the district court should have appointed counsel at an earlier stage of the proceedings and resolved several discovery disputes in his favor. These adverse rulings, Schubert contends, placed him at a disadvantage and denied him the opportunity to develop evidence that he contends would have helped him win his trial.

■ We begin with the challenge to the jury's verdict. Here Schubert faces an uphill battle because we review the facts in the light most favorable to the jury's verdict and will not set aside the verdict so long as there exists in the record a reason-

able basis to support it. *Cefalu v. Village of Elk Grove,* 211 F.3d 416, 419 (7th Cir. 2000); *Haschmann v. Time Warner Entertainment Co.,* 151 F.3d 591, 599 (7th Cir.1998). To prove that the guards inflicted cruel and unusual punishment by failing to protect him from violence at the hands of other inmates, Schubert had to demonstrate that the defendants were deliberately indifferent to his safety, in effect condoning the attack by allowing it to happen. *Langston v. Peters,* 100 F.3d 1235, 1237 (7th Cir.1996); *Haley v. Gross,* 86 F.3d 630, 640 (7th Cir.1996). And to demonstrate deliberate indifference, Schubert had to show that the guards had actual knowledge of an impending and easily-preventable risk of harm, and that they consciously disregarded the risk of harm. *Lewis v. Richards,* 107 F.3d 549, 553 (7th Cir.1997).

■ Even if we were to view the facts adduced at trial in the light most favorable to Schubert, we see no evidence in the record suggesting that the guards had actual knowledge of an impending and preventable risk of harm to Schubert. Each guard testified that he did not witness the incident and had no reason to suspect that anything was amiss on the day it occurred. When questioned, each stated that he was unaware of any facts suggesting that Schubert was at risk, and after cross-examination by Schubert's attorney this testimony remained largely undisputed. And although two of Schubert's witnesses testified that several guards stood by and watched Schubert being beaten unconscious, those guards were not these defendants. *Cf. Gentry v. Duckworth,* 65 F.3d 555, 561 (7th Cir.1995) (to establish liability under 42 U.S.C. § 1983, plaintiff must show that named officials are personally responsible for alleged constitutional deprivations). The jury's verdict is supported by a reasonable basis in the record.

■ Schubert next argues that he would have prevailed at trial had the district court requested an attorney to represent him earlier in the proceedings, and compelled the defendants to comply with his discovery requests. We review the district court's refusal to appoint an attorney for abuse of discretion. *Weiss v. Cooley,* 230 F.3d 1027, 1034 (7th Cir.2000). The key question is whether Schubert appeared competent to try the case himself given the difficulty of the case, and, if not, whether the presence of counsel would have made a difference in the outcome. *See Luttrell v. Nickel,* 129 F.3d 933, 936 (7th Cir.1997). The district court requested an attorney to represent Schubert only after it denied the defendants' motion for summary judgment. Prior to that stage, Schubert was able to competently file motions and on his own was able to survive a summary judgment motion. *Cf. Weiss,* 230 F.3d at 1034 (no abuse of discretion where pro se plaintiff able to file a complaint raising key claims and competent summary judgment motion). Additionally, the issues in this case were not overly complex, and discovery consisted mostly of finding direct evidence and witnesses. We see no abuse of discretion.

■ We review the district court's discovery rulings, including the decision whether to sanction parties for discovery abuses, for abuse of discretion. *In re Golant,* 239 F.3d 931, 937 (7th Cir.2001); *Woods v. City of Chicago,* 234 F.3d 979, 990 (7th Cir.2000). We will not reverse in the absence of actual prejudice. *Searls v. Glasser,* 64 F.3d 1061, 1068 (7th Cir.1995). Although Schubert claims to the contrary, the record shows that the defendants eventually turned over most of the relevant discovery material Schubert requested, including incident reports from his attack, photographs of his injuries, and the names of inmates in the segregation yard on the

day in question. One bit of discovery was disputed: Schubert requested the names and addresses of all prison staff who may have witnessed the attack, which the defendants refused to tender. Schubert attempted to compel production of the material, but failed to serve the defendants with his motion. The district court directed Schubert to serve the defendants and at the same time ordered the defendants to show cause why they should not be sanctioned for engaging in dilatory behavior. In the end, however, Schubert failed to comply with his duty under the district court's order, so the district court struck his motion to compel and declined to award sanctions. Schubert also contends that the defendants refused to allow him to see or copy a video surveillance tape of his attack. The defendants denied the existence of such a tape. Schubert claims now in his brief that a prison employee told him otherwise, but he did not mention this to the district court, and in any event the undisputed testimony at trial suggests that Menard did not have a video surveillance camera trained on the area of the back yard where Schubert was attacked on the day in question. The district court did not abuse its discretion.

■ Finally, Schubert claims that his appointed attorney was constitutionally ineffective. The Sixth Amendment guarantee of effective assistance of counsel is not applicable in civil cases, however. Since Schubert had no constitutional right to appointed counsel, it follows that he had no constitutional right to effective assistance of counsel. *See Barkauskas v. Lane,* 946 F.2d 1292, 1294 (7th Cir.1991); *Prihoda v. McCaughtry,* 910 F.2d 1379, 1386 (7th Cir. 1990).

---

* After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is

The judgment of the district court is therefore AFFIRMED.